STEVENS' ADMINISTRATOR *vs.* STEVENS' EXECUTOR and others.

1. Where executors authorized to pay legacies given to testator's infant children by transfer of lands, convey part of the lands set aside for that purpose to one of their number—the mother of an infant child—in trust for the infant, these lands, upon the death of the infant, are to be considered as real estate and descend to her heirs-at-law, and do not go to her next of kin.

2. When legacies so authorized to be paid in land are directed to be held by the executors for the infant child until·it attain a certain age, a conveyance to one of the executors in trust for the infant, according to the provisions of the will, will be held a proper setting aside of such lands and conveyance for the benefit of such child.

3. A direction that no child shall control the part given to him, or which shall come to him by inheritance from another child, includes personal property to which one child is entitled by succession from another. And such property is included in the direction that the executors shall take care of all money and property devised and bequeathed to any of them, until they arrive at a specified age. But the administrator of such deceased child is entitled to receive the shares of such next of kin as are not within that age, for distribution to them.

4. A direction to pay the income of each child to its mother for its support until it is entitled to its share, will not be held to direct such payment after the death of the child until the others arrive at the age specified for receiving their share. The direction being to pay for its support is terminated by its death.

This cause was argued on final hearing, upon the bill and the answers of Mary P. Lewis and of the infant children of Edwin A. Stevens.

*Mr. Vanatta,* for complainant.

*Mr. F. B. Ogden,* for Mrs. Lewis.

*Mr. Besson,* for infants.

THE CHANCELLOR.

This suit is by the administrator of Julia A. Stevens, deceased, one of the children of Edwin A. Stevens. It is brought against the executors of his will to ascertain and

recover the part of the estate of their testator which the complainant may be entitled to under his will. The other surviving children of the testator, being his residuary legatees and the next of kin of Julia, are made parties. They are all infants except his daughter, Mary P. Lewis, wife of Edward P. C. Lewis. She has answered with her husband, and the infants have answered by their guardian ad litem, Martha B. Stevens, their mother. The executors have not answered. They, as executors, have no interest in the questions raised, the controversy being between Mrs. Lewis and the infants, and Mrs. Stevens. The executors are properly parties to the suit, and Mrs. Stevens is a party, though she has not answered either individually or as executrix. In both capacities she is willing to submit to such decree as the court may make, without controversy on her behalf. Thus all necessary and proper parties are before the court.

Edwin A. Stevens died August 28th, 1868. He left a will, dated August 5th, 1865, with a codicil, dated April 15th, 1867; these were duly proved and probate issued to the complainant, Samuel B. Dod, and the defendants, Martha B. Stevens and William W. Shippen. He left eight children; two of them, Albert B. and Richard, born after the date of the will, and Richard born after the date of the codicil.

Julia, one of the daughters, died after the testator, on the 7th day of August, 1868. All the children, except Mrs. Lewis, were, at his death, and still are, under twenty-one. Mrs. Lewis was a child by a former wife, and half-sister of the infants.

The will gave to Mrs. Stevens and each of his children a legacy of $100,000; the codicil gave a like legacy to Albert, and to any child that might thereafter be born. The will directed these legacies to be paid by productive property standing in his own name, and by the purchase of productive real estate, and bonds and mortgages, and other productive assets, of the Hoboken Land and Improvement Company.

The codicil empowered his executors to pay the legacies given in the will and codicil by transferring personal pro-

perty, stocks, bonds, and other securities in which his money was invested, as well as any of his real estate standing in his own name, or such as his executors should receive from the Hoboken Land and Improvement Company; and in the case of the transfer of real estate, he gave power to his executors to pass the title, fee simple or otherwise, provided such property, real or personal, so transferred should be equal in value to so much of the legacy for which it should be transferred or conveyed to such legatees; all which payments in the manner therein authorized, to be in the discretion of the executors.

Besides the legacies of $100,000 to his wife and each of his children, the codicil devised and bequeathed real estate and money legacies to others to a large amount. After these gifts the codicil declared, that the devise and bequest to his wife, in his original will, of one-third of the profits of the remainder of his estate, in that devise and bequest mentioned, he intended, and it was his will, should be of the remainder of his estate, after making the demands upon it in that codicil provided for. In the next sentence he gave, devised, and bequeathed the rest and residue of his estate, both real and personal, unto his wife and children born, and to be born; each son to have two shares, and his wife two shares, and each daughter one share.

The personal estate of the testator was, in the inventory, valued at $9,741,407.90, including fifteen thousand shares of the stock of the Hoboken Land and Improvement Company, valued at $8,996,677. His real estate at the same time was appraised and valued at $1,181,500. This included Castle Point and the homestead, devised to his four sons, and valued at $350,000.

On the 9th of December, 1868, the executors did set apart out of the estate, real and personal, to the widow and children of the testator, $100,000 to each; and did set apart for his daughter Julia, three lots of land in Hoboken, valued at $26,333, with sufficient personal property to make the legacy of $100,000 bequeathed to her. These lands were, by the executors, conveyed to Martha B. Stevens in fee, in trust for

Julia, until she should arrive at the age of twenty-four years, and at that period to convey the same to her in accordance with the provisions of the will. And, at the same time, all the residue of the real estate of the testator, amounting in value to $258,999, was conveyed to his wife and children in payment of the legacies of $100,000. The personal estate set apart for the purpose was, at the same time, transferred for the payment of these legacies.

The executors, on the 16th of May, 1870, settled their account before the Orphans Court of the county of Hudson, and by this there remained in their hands on December 31st, 1869, a balance of $6,915,661.93, all invested in fifteen thousand shares of the Hoboken Land and Improvement Company. This was above the $800,000 paid over or held in trust by them for these certain legacies.

The first question raised is, whether these three lots so conveyed to Mrs. Stevens for Julia are to be considered as real estate. If they are, Mrs. Lewis and Mrs. Stevens are not entitled by succession to any share in them; if personal, they are entitled to share equally with the infant children.

The executors were clearly authorized by the will to pay the legacies of $100,000, by conveying lands for the whole or any part. These were given as money legacies, and were due one year after testator's death. To Mrs. Stevens and Mrs. Lewis they could then be paid and delivered in full; they were then entitled to them. The direction that the others should not have the control or management of their shares until twenty-two or twenty-four years of age, and that until then the executors should take care of the money and property given to them, made the executors trustees for each infant child of the property given to it; but it was their duty to set off to each one its legacy at the end of the year, and take charge of it for each. This could be set apart in real or personal property, and when so designated and set apart each was entitled to any increase in value, and must suffer any loss in deterioration in his own share so separated. These lots the executors set apart by conveying them to Mrs. Stevens,

one of their own number, in trust for Julia. She could not, or did not take the title as her guardian, for she had not given the bonds required before she can act as such; the title is to her in trust. The question before me is not upon the properiety of this transfer under the will, or whether it should not have been made to all three executors. It has been made, and by it Mrs. Stevens held these lots in trust for Julia at her death. That was a money legacy, and had by authority plainly given in the will, been converted into real estate. This conversion required no confirmation by Julia; the executors by the will had the power to convey it as part of the legacy. It so existed at Julia's death. Like the real estate of every *cestui que trust*, it descended to her heirs. The question, whether real or personal estate, depends upon what was the actual character of it at her death.

The second question is, whether the complainant is entitled to receive the personal property set off to Julia for her legacy of $100,000, and her share of the residue, or the income of either. The direction that no child shall control the part given to him, or which shall come to him by inheritance from another, until twenty-two or twenty-four, is very explicit. The word inheritance is here used as designating anything that they might be entitled to by succession, and includes personal property. The provision in the next paragraph, that the executor shall "take care of all money and property devised and bequeathed to any of them," does, literally construed, include this money coming by inheritance, because it is money bequeathed to Julia; and taken in connection with the provision against their having control of it, and there being no other way by which it could be kept from the control of the child, the literal construction that the legacy, as "property bequeathed to one of them," must remain in the care of the executors until the next of kin are entitled to receive it, is necessary to give effect to the plainly expressed intention of the testator. But the complainant is entitled to receive the distributive shares of Mrs. Stevens and Mrs. Lewis out of the legacy, and of the residue to which Julia

was entitled, each is entitled to one-eighth. The provision in the will is not against vesting, or even against payment before twenty-two, but against an infant child having control before the ages specified. The surviving infant children will each be entitled to receive his or her share of Julia's estate upon arriving at the prescribed age, and need not wait until Julia would have been twenty-two years old. Nor can the younger children receive their part until they are of the designated age.

A third question is, whether Mrs. Stevens is entitled to have the income of Julia's share paid to her. The will directs the executors "to take care of all money and property devised and bequeathed to any of said children, except the income of each of them, which income their mother shall receive for their support and education until the children respectively shall be entitled to the control or management of the property devised and bequeathed." The words of the preceding clause forbid the payment of either the principal or income of Julia's share to the infant children until of the ages mentioned. This clause differs in not mentioning the share that one child may inherit from another; and although the words, "the income of each of them," might be held literally to include the income from inherited property, yet the location of these words directly after the "property bequeathed to any of said children," and the object of the payment—the support and education of a child now dead, leads inevitably to the conclusion that this direction does not include the income of the share bequeathed to a child who has died, or to the income to which the other infant children are entitled on their distributive portion of such share. If the provision made for the support and education of any child should not be sufficient (a case which can hardly arise here), this court could and would direct so much as necessary of the income of that child's share of Julia's estate to be appropriated for the purpose; otherwise, it must be accumulated by the trustees for the benefit of the infant.

A fourth question arises, as to securing Mrs. Stevens'

Vol. viii.                              u

right to one-third of the income out of Julia's share of the residue. As to the part of Julia's share in the residue coming to herself, there can be no difficulty. The executors must, during Mrs. Stevens' life, retain the one-third of the eighth of Julia's share in the residue coming to Mrs. Lewis, to secure the payment of the income on it to Mrs. Stevens.